No. 13399

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

JOHN CLARK,

Claimant and Appellant,

-vs-

HENSEL PHELPS CONSTRUCTION CO., Employer
and AETNA CASUALTY & SURETY CO.,

Insurer and Respondent.

---

Appeal from:   Workers' Comp. Court
               Judge William E. Hunt, presiding.

Counsel of Record:

For Appellant:

Hoyt and Bottomly, Great Falls, Montana
John C. Hoyt argued, Great Falls, Montana
Thomas Lewis appeared, Great Falls, Montana

For Respondent:

Jardine, Stephenson, Blewett & Weaver, Great
 Falls, Montana
James Aiken argued, Great Falls, Montana

---

Submitted:  January 27, 1977

Decided: FEB 16 1977.

Filed: FEB 8 1977

Thomas J. Kearney
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This appeal concerns written notice to claimant and approval of the Division of Workers' Compensation prior to the termination of workers' compensation benefits to an injured workman.

Claimant John Clark was injured in an industrial accident on August 16, 1973. He was employed by Hensel Phelps Construction Co. insured under Plan II of the Workers' Compensation Act. Aetna Casualty & Surety Co., "carrier", was the construction company's insurer. Clark was paid temporary total disability benefits from the date of the accident through October 2, 1973. The carrier stopped payment of benefits without notice to claimant or approval of the Division of Workers' Compensation. In June 1975, claimant requested a hearing before the Workers' Compensation Court. That court found claimant entitled to temporary total disability benefits from the date of the accident through October 2, 1973 and again from October 28, 1975 until further order of the court or until the claimant was able to return to work. No benefits were awarded for the period of October 3, 1973 through October 28, 1975, and it is from this omission claimant appeals.

The record reveals the injury suffered by claimant was an extremely painful and disabling back injury. Since the accident claimant has experienced recurring burning pains in his lower back and left leg. The injury has created a weakness in his left leg causing a limp which is becoming progressively more pronounced.

Immediately after the accident claimant was examined by Dr. Schroeder in Eureka, Montana. Dr. Schroeder diagnosed claimant's injury as a "muscle spasm, left lumbar" and referred him to a

specialist. Later Dr. Schroeder informed the carrier claimant could return to work on October 3, 1973. This opinion was used by the carrier as the basis for termination of workers' compensation benefits to claimant. The record is clear, claimant was unable to do any kind of physical labor for the period in question. From the date of the accident through October 1975, claimant was examined by at least eight different doctors for treatment for his injured back.

On October 28, 1975 claimant was examined for the first time by Dr. Richard A. Nelson. On that date Dr. Nelson determined claimant was disabled and unable to engage in his normal kind of work as a result of the existing back injury.

Apparently Dr. Nelson's report was used by the Workers' Compensation Court in fixing the date for the resumption of benefit payments to claimant. There was no reason given by the court for the failure to require the carrier to comply with the notice and approval provisions of the Workers' Compensation Act prior to the termination of compensation benefit payments.

At issue is the necessity of giving claimant written notice and acquiring approval of the Division of Workers' Compensation, prior to the termination of benefits.

The controlling section of the Workers' Compensation Act is section 92-615, R.C.M. 1947, amended in 1974, but provided in 1973:

> "* * * If the insurer determines to initially deny a claim, or after a claim has been accepted, terminates biweekly compensation benefits, it may do so only after fifteen (15) days written notice to the claimant and the division, and after written approval of the division."

The effect of this statute upon a fact situation as in the instant case, is a matter of first impression. However, the statute clearly and unambiguously states that notice to claimant and the division, and written approval of the division are prerequisites to the termination of compensation benefits. Where the language of a statute is plain, unambiguous, direct and certain, the statute speaks for itself and there is nothing left for the court to construe. Hammill v. Young, ____Mont.____, 540 P.2d 971, 32 St. Rep. 935; Dunphy v. Anaconda Co., 151 Mont. 76, 438 P.2d 660.

The Rhode Island Workmens' Compensation Act contains a provision similar to section 92-615, R.C.M. 1947. Rhode Island General Laws 1956, section 28-35-46 states in pertinent part:

> "Before an employer may discontinue, suspend or reduce compensation payments whether they are being received under an agreement, award, order, finding or decree, the employer shall notify the commission and the employee of his intention to discontinue, suspend or reduce payments and the reason therefor.* * *"

An interpretation of the effect of this statute to a fact situation similar to the instant case is found in Carpenter v. Globe Indemnity Co., 65 R.I. 194, 14 A.2d 235, 240. There the carrier terminated compensation payments to an injured workman on the basis of a doctor's report which stated claimant was able to return to work. Claimant denied receiving notice of the termination of benefits and it was clear the Workers' Compensation Commission had received no such notice. The court found the unilateral termination ineffective noting:

> "* * * In our opinion, a finding that such disability has ended or diminished can be reached only by a supplemental agreement, also approved by the director of labor * * *."

A more recent case Raymond v. B.I.F. Industries, Inc., 112 R.I. 192, 308 A.2d 820 is in accord.

- 4 -

It is clear Rhode Island courts interpret their statute as meaning the employer or his insurer may not unilaterally terminate workers' compensation benefits. Further, if the employer does attempt to unilaterally terminate the payment of benefits such attempted termination is ineffective. The employer remains liable for the payment of benefits until the termination is accomplished by following the statutory notice provision.

The cause is remanded to the Workers' Compensation Court with instructions to direct payments to claimant for the period October 3, 1973 to October 28, 1975. With that exception, the decision of the Workers' Compensation Court is affirmed.

_____
Justice.

We Concur:

_____
Chief Justice

_____

_____

_____
Justices.

- 5 -